

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PIAZZA D'ITALIA HOTEL ASSOCIATES, L.L.C. and DARRYL BERGER COMPANIES, INC. | * * * * | CIVIL ACTION NO. **02-2247** |
| Plaintiffs, | * * | SECTION **SECT. B MAG. 5** |
| VERSUS | * * | JUDGE |
| STARWOOD HOTELS AND RESORTS WORLDWIDE, INC. | * * * | MAGISTRATE |
| Defendants, | * * | **JURY TRIAL DEMANDED** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiffs, Piazza D'Italia Hotel Associates, L.L.C. ("PDIHA") and Darryl Berger Companies, Inc. ("Berger"), respectfully allege as follows:

### Parties

**1.**

PDIHA is a limited liability company established under the laws of the State of Louisiana, with its principal place of business in Orleans Parish in the State of Louisiana.

- 1 -

616970/6

**2.**

Berger is a corporation established under the laws of the State of Louisiana, with its principal place of business in Orleans Parish in the State of Louisiana.

**3.**

Starwood Hotels and Resorts Worldwide, Inc. ("Starwood") is a corporation established under the laws of the State of Maryland with its principal place of business in the State of New York.

**Jurisdiction and Venue**

**4.**

The amount in controversy in this matter exceeds $75,000, exclusive of interest and costs.

**5.**

The plaintiffs, PDIHA and Berger, and the defendant, Starwood, are citizens of different states.

**6.**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

**7.**

The Court is the proper venue for this action pursuant to 28 U.S.C. § 1391.

**8.**

Starwood does business in the State of Louisiana and is subject to the jurisdiction of this Court.

## Facts

**9.**

The principals of PDIHA and Berger have developed commercial properties in New Orleans and elsewhere, including several hotels.

**10.**

In 1996, the principals of Berger became interested in developing a major, multi-tower convention hotel at the Piazza D'Italia. The project would utilize almost the entire Piazza D'Italia square on Poydras Street in New Orleans, Louisiana, including the City owned land, the Lykes building and the Piazza D'Italia public park. The principals of Berger organized PDIHA to pursue the project. Hereinafter PDIHA and Berger will be referred to collectively as "the Piazza Group."

**11.**

In September of 1996, the Piazza Group submitted its response to the Request for Proposal and Qualifications from the City of New Orleans and the Piazza D'Italia Development Corporation for the development of a hotel at the Piazza D'Italia. Shortly thereafter, in late 1996 or early 1997, the City and the Piazza D'Italia Development Corporation selected the bid submitted by the Piazza Group and entered into negotiations with the Piazza Group for a lease of the City owned land on which the hotel would be constructed.

**12.**

Over the next two years, the Piazza Group continued to commit substantial organizational, planning and financial resources to the multi-tower hotel project at the Piazza D'Italia.

**13.**

Other than the City owned land and another small building that was not part of the hotel development, the only other property in the Piazza D'Italia square is the former office tower commonly known as the Lykes Building. On or about July, 1999, an affiliate of the Piazza Group acquired the Lykes Building located adjacent to the Piazza D'Italia at 300 Poydras Street in New Orleans to convert into a hotel tower as part of the contemplated hotel complex.

**14.**

By purchasing the Lykes Building and through a substantial expenditure of effort and finances, the Piazza Group secured the physical capability to develop the entire square of property and demonstrated its commitment to the multi-tower hotel complex.

**15.**

During 1999, the Piazza Group pursued a hotel operator and financial investors for the project. In late 1999 and early 2000, the Piazza Group entered into discussions with Starwood concerning the possibility of Starwood participating in the project.

**16.**

Starwood is a developer, owner and operator of Westin, W, Sheraton and other hotels throughout the world. Starwood, either directly or through subsidiaries and affiliates, has operated several major hotels in the City of New Orleans. In 1999, Starwood lost the right to continue to operate its Westin hotel in New Orleans and, as a result, Starwood no longer operated a Westin hotel in the New Orleans market.

**17.**

Because of Starwood's high level of interest in re-establishing a Westin brand in the New Orleans market after losing its prior hotel operation, it entered into discussions with

representatives of the Piazza Group in late 1999 or early 2000 about locating a Westin at the Piazza D'Italia site. These negotiations resulted in an agreement in principle for the development of a multi-tower Westin hotel at the Piazza D'Italia utilizing the City owned land, the Lykes building and the Piazza D'Italia public park. The Piazza Group would develop the hotel. Starwood would manage the hotel under the Westin brand, invest or arrange for other investors to provide in excess of $13 million in equity, and provide additional debt financing and loan guarantees. A third-party investor, Multi Employer Development Partners, L.P. ("MEDP"), would provide significant equity financing along with the equity financing to be provided by Starwood.

**18.**

In conjunction with the planning and financing of the project, Starwood prepared operating pro formas detailing the anticipated financial performance of the hotel as forecast by Starwood. These pro formas, which were relied upon in the evaluation and underwriting of the project, included the anticipated future value of the property and returns on investment in the project. The pro formas were shared with the partners in the project, and were forwarded by Starwood to other potential investors and to various third parties including prospective lenders and appraisers.

**19.**

Starwood prepared a detailed Letter of Intent setting forth the parties' agreement dated November 15, 2000. The Letter of Intent, *inter alia*, defines the development, including the number of rooms, budget, capital contributions by the investors, including Starwood, and

detailed terms spelling out the obligations of the Piazza Group, Starwood and MEDP. In the letter, Starwood urged the parties to move forward on the project expeditiously.

**20.**

In reliance on the commitments of the parties and the agreement in principle that is described in the Letter of Intent, the Piazza Group ceased looking for other hotel managers and investors and continued costly predevelopment and pre-closing activities that eventually would total millions of dollars. These activities included obtaining commitments from banks to provide financing, negotiation and final approval of the lease agreement for the City owned land, land use approvals from the applicable governmental agencies, and preparation of construction plans and specifications. Starwood was aware of the substantial expenditures the Piazza Group was making and was continuously involved in the predevelopment and pre-closing activities consistent with their agreed-upon role in the project. Throughout this time period, Starwood repeatedly confirmed its commitment to the project and its intent to proceed in accordance with the terms set forth in the Letter of Intent.

**21.**

In 2000 and 2001, in reliance on the commitment of Starwood to the hotel development, the Piazza Group instructed the architects to complete plans and specifications for the development at considerable expense to the Piazza Group. Starwood met with the architects and was involved extensively in the design of the hotel complex, consistent with their agreed-upon role in the project.

**22.**

In anticipation of the pending closing, the Piazza Group concluded negotiations with the City and the Piazza D'Italia Development Corporation for a lease of the City owned land at the Piazza D'Italia. The City Council of the City of New Orleans adopted and the Mayor signed the series of ordinances authorizing the execution of the approved lease agreement and related documents with the City to enable the Piazza Group to lease the City owned land at the Piazza D'Italia for development of a hotel. The board of directors of the Piazza D'Italia Development Corporation similarly adopted a resolution authorizing the execution of the approved lease agreement. The lease agreement and related documents were completed and ready to be signed in early July, 2001.

**23.**

Starwood agreed to share certain predevelopment costs with the Piazza Group. Starwood paid in excess of $1.3 million pursuant to this cost sharing arrangement. Starwood's actions reaffirmed its commitment to the project and were consistent with its obligations and representations to the Piazza Group.

**24.**

Starwood participated in negotiations with Westdeutsche Landesbank Girozentrale ("WestLB") to obtain debt financing for the development. On March 19, 2001, Starwood accepted the Proposal of Terms and Conditions (the "Loan Term Sheet") submitted by WestLB setting forth the terms of the debt financing to be provided by WestLB. The Loan Term Sheet is predicated expressly on information received from Starwood about the development and sets forth specific obligations Starwood assumed in connection with the financing, including its

agreement to guarantee payment of cost overruns in certain areas and to be responsible for a principal/debt service payment guaranty. Starwood's acceptance of the WestLB proposal confirmed its contractual obligations to the Piazza Group and is one of many actions evidencing Starwood's commitment to the project and its intent to proceed with the closing.

**25.**

In connection with the WestLB financing proposal, on March 19, 2001, Starwood also executed an Arranger Fee Letter obligating itself to pay certain fees to WestLB, including a fee upon execution of the Loan Term Sheet, a Construction Loan Fee Letter requiring payment of additional fees on closing (collectively the "Fee Letters") and an indemnity agreement in favor of WestLB.

**26.**

The Fee Letters subsequently were amended by letter dated June 25, 2001. The amendment obligated the Piazza Group and MEDP to pay the loan commitment fee; however, Starwood agreed by separate letter to reimburse a portion of these funds at the closing. As required by the amended Fee Letter and with the full knowledge of Starwood, the Piazza Group and MEDP paid West LB a $1,000,000 commitment fee in late June of 2001. The Piazza Group contributed to the payment of the fees in reliance on Starwood's commitment to the project.

**27.**

By the summer of 2001, the form and substance of the lease agreement for the City owned land at the Piazza D'Italia had been approved by all applicable parties and was ready for execution. An affiliate of the Piazza Group was prepared to convey the Lykes Building to the partnership that was to be formed between the Piazza Group, MEDP, and Starwood for the

development and ownership of the Westin New Orleans Hotel project. The requisite debt and equity financing commitments had been obtained. With the right to control the Lykes Building and the City owned land and with the necessary debt and equity financing commitments in place, the Piazza Group was ready, willing and able to proceed with the closing of the Westin multi-tower hotel project.

**28.**

The Piazza Group had incurred millions of dollars in costs associated with predevelopment and pre-closing activities in reliance on Starwood's commitments and obligations by the summer of 2001. Starwood was aware of and heavily involved in these activities and knew that the Piazza Group was expending significant sums of money to move the development forward in reliance on Starwood's participation in the project. At no time did Starwood indicate that it considered its commitment to the development tentative. To the contrary, Starwood repeatedly reaffirmed its commitment to the project and participated actively in all aspects of the development, consistent with its agreed-upon role in the project. Starwood's conduct indicated that it considered itself bound by its agreement with the Piazza Group as set forth in the Letter of Intent and its representations to the project participants.

**29.**

During the course of predevelopment and pre-closing activities, numerous in person and telephone meetings were conducted in which Starwood participated with the Piazza Group and MEDP to discuss the coordination of the project and finalization of the detailed documents. One pre-closing meeting took place on April 10-11, 2001 in Dallas, Texas. Another pre-closing meeting took place on June 27, 2001 in Seattle, Washington. Representatives of

Starwood, the Piazza Group and MEDP attended both meetings. During these discussions and meetings and through its conduct and actions, Starwood expressed and demonstrated its continuing commitment to the project.

**30.**

Throughout the time after the parties executed the Letter of Intent, they negotiated and reduced to more detailed written documents the agreement set forth in the Letter of Intent. The terms of the detailed documents are substantially similar to the Letter of Intent. Because the parties had reached agreement on the material terms of the deal as set forth in the Letter of Intent, and with Starwood's consent and active participation, they moved forward with predevelopment and pre-closing activities, pending only finalization of detailed documents consistent with the Letter of Intent and the parties' agreement.

**31.**

By late July 2001, only minor details of the documentation remained to be finalized. The Piazza Group reasonably anticipated a final closing and commencement of construction within days. Extensive preparation for the commencement of construction proceeded, including delivery to the site of foundation pilings, all at substantial cost to the Piazza Group. Consistent with their actions and statements during the course of the entire pre-development and pre-closing period, Starwood did not suggest to the Piazza Group that it was reconsidering its participation in the project.

**32.**

Nonetheless, without prior warning to the Piazza Group, Starwood suddenly and unexpectedly announced in a telephone conversation only a few days before the final closing that

616970/6

it was withdrawing its commitment to invest equity in the project, in breach of its agreement and in total disregard of the Piazza Group's multi-million dollar investment in the project.

**33.**

On information and belief obtained after Starwood withdrew from the project, Starwood had contemplated this action for a considerable period of time and did not so inform the Piazza Group, notwithstanding Starwood's knowledge that the Piazza Group was spending substantial sums of money in reliance on Starwood's commitment to the project.

**34.**

Starwood's unilateral, pre-meditated breach of its obligations to the Piazza Group was confirmed by letter dated July 30, 2001, in which it advised that it was "unable to proceed with an equity investment," but stated that it was prepared to move forward with a mezzanine loan and credit enhancement. Starwood's letter expressly references the deal agreed to by the parties, stating "all other terms of our deal would remain as previously negotiated, including the terms of the management agreement, the $4.6 million mezzanine loan and the $22 million credit enhancement guaranty to WestLB."

**35.**

In the aftermath of Starwood's unjustified, improper, bad-faith and last-minute abandonment of its obligations, the Piazza Group attempted unsuccessfully to resurrect the Westin multi-tower hotel complex that had been planned, at great expense and effort.

**36.**

Since Starwood's failure to fulfill its obligations, the Piazza Group has partially mitigated the millions of dollars of damage it sustained as a result of the loss of the Westin multi-

616970/6

tower hotel complex by agreeing to develop and build a smaller single tower hotel that utilizes only a portion of the Piazza D'Italia square. Nevertheless, as the result of Starwood's improper, bad-faith conduct, the Piazza Group has incurred losses of millions of dollars expended in connection with the Westin project and tens of millions of dollars in lost profits, as well as attorneys' fees it has and will incur.

## Causes of Action

### Breach of Contract

**37.**

The Piazza Group incorporates paragraphs 1 through 35 above as if set forth fully herein.

**38.**

Starwood entered into a valid and enforceable agreement with the Piazza Group.

**39.**

The parties' conduct confirmed their intent to be bound by the Letter of Intent that they executed. The Piazza Group invested millions of dollars and substantial time in the development. Consistent with its role in the project, Starwood worked with WestLB to obtain financing for the development, executed numerous agreements with WestLB obligating itself to share the cost of financing fees, contributed to predevelopment costs, represented to City officials and other third parties that it was committed to the development, and was involved actively in design and construction planning for the hotel. At no time during these activities did Starwood indicate that it considered its participation in the project tentative. Indeed, in its letter

616970/6

withdrawing its equity investment, Starwood acknowledged the parties' agreement, referencing "the terms of our deal."

**40.**

Starwood breached its contract with the Piazza Group when it failed to contribute $13 million of equity as agreed and when it subsequently refused to provide debt financing and loan guarantees. Moreover, Starwood's breach of contract was pre-meditated and intentional and, therefore, in bad faith.

**41.**

The Piazza Group was damaged by Starwood's breach of contract. The Piazza Group is entitled to recover all damages resulting from Starwood's failure to perform, including out of pocket expenses, lost profits and attorneys' fees.

### Count 2: Detrimental Reliance

**42.**

The Piazza Group incorporates paragraphs 1 through 35 above as if set forth fully herein.

**43.**

Starwood repeatedly represented to the Piazza Group that it would participate in developing the Westin multi-tower hotel complex at the Piazza D'Italia site on Poydras Street in New Orleans by, *inter alia*, contributing or finding another to contribute in excess of $13 million in equity required to develop the hotel and providing additional debt financing and loan guarantees. Starwood made additional representations concerning its participation in the project

as set forth in the Letter of Intent it prepared and executed and acted in a manner consistent with these representations until it reneged on these representations.

**44.**

The Piazza Group relied to its detriment on Starwood's representations and actions by investing substantial financial and other resources in the project and foregoing other opportunities to pursue the Piazza D'Italia project with Starwood.

**45.**

The Piazza Group's reliance on Starwood's representations and actions was reasonable. Starwood itself contributed funds to the project and, consistent with its role in the project, participated extensively in predevelopment and pre-closing activities. Starwood knew that the Piazza Group was incurring significant expenses connected with the project and did nothing to indicate that its commitment was tentative. Further, Starwood represented to MEDP, City officials, WestLB and others that it was committed to the project and would invest in excess of $13 million in equity plus additional debt financing.

**46.**

The Piazza Group is entitled to recover all damages caused by its reliance on Starwood's representations and actions, including all expenses incurred in connection with the project and lost profits.

### Count 3: Negligent Misrepresentation

**47.**

The Piazza Group incorporates paragraphs 1 through 35 above as if set forth fully herein.

**48.**

Starwood repeatedly represented to the Piazza Group that it would participate in developing the Westin multi-tower hotel complex at the Piazza D'Italia site on Poydras Street in New Orleans by, *inter alia*, contributing or finding another to contribute in excess of $13 million of the equity required to develop the project and providing additional debt financing and loan guarantees. Starwood made additional representations concerning its participation in the project as set forth in the Letter of Intent it prepared and executed.

**49.**

Starwood had a duty to provide the Piazza Group with correct information. Whether Starwood intended to invest equity and debt in the project as represented was information exclusively within Starwood's control and was not independently verifiable by the Piazza Group. Further, Starwood knew or should have known that the Piazza Group was relying on its representation that it would contribute equity and debt but said nothing to correct the representation. Finally, because a contractual relationship existed between the Piazza Group and Starwood, Starwood had a duty to provide the Piazza Group with correct information.

**50.**

The Piazza Group reasonably relied on Starwood's representations that it would provide both equity and debt financing for the Piazza D'Italia hotel project. Starwood itself contributed funds to the project and, consistent with its role in the project, participated extensively in predevelopment and pre-closing activities. Starwood knew that the Piazza Group was incurring significant expenses connected with the project and did nothing to indicate that its representations were inaccurate or unreliable. Further, Starwood represented to MEDP, City

- 15 -

officials, WestLB and others that it would invest in excess of $13 million in equity plus additional debt financing. The Piazza Group had no way to know or discover that Starwood's representations were not accurate.

**51.**

Despite numerous representations regarding its participation in the project as agreed between the parties, Starwood failed to advise the Piazza Group that it did not intend to satisfy its obligations until a considerable period after it was aware that it was reconsidering its participation in the project.

**52.**

Starwood's misrepresentations caused damage to the Piazza Group. The Piazza Group is entitled to recover all damages caused by Starwood's misrepresentations, including the expenses it incurred in connection with the project and lost profits.

**WHEREFORE**, Piazza D'Italia Hotel Associates, L.L.C. and Darryl Berger Companies, Inc. pray that after due proceedings, the Court enter judgment in their favor, and against Starwood Hotels and Resorts Worldwide, Inc., as follows:

1. Granting judgment in favor of Piazza D'Italia Hotel Associates, L.L.C. and Darryl Berger Companies, Inc. and against Starwood Hotels and Resorts Worldwide, Inc. on any or all of the claims asserted herein and for such damages as have been caused by the conduct of Starwood Hotels and Resorts Worldwide, Inc., in an amount to be proven at trial, plus interest and attorneys' fees as provided by law; and

2. Granting Piazza D'Italia Hotel Associates, L.L.C. and Darryl Berger Companies, Inc. any other legal and equitable relief to which they are entitled.

616970/6

## Jury Demand

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Piazza D'Italia Hotel Associates, L.L.C. and Darryl Berger Companies, Inc. demand a trial by jury with respect to all issues so triable in this action.

Respectfully submitted,

*Phil Wittmann* T.A.

Phillip A. Wittmann, #13625
Steven W. Usdin, #12986
Meredith A. Cunningham, #26465
    Of
STONE, PIGMAN, WALTHER,
    WITTMANN & HUTCHINSON, L.L.P.
546 Carondelet Street
New Orleans, Louisiana 70130-3588
Telephone: (504) 581-3200

Attorneys for Piazza D'Italia Hotel Associates, L.L.C. and Darryl Berger Companies, Inc.

**SERVICE**
Service will be effected pursuant to Louisiana's Long-Arm Statute, La. R.S. 13:3204

616970/6