FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 FEB -2  PM 4: 07

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PIAZZA D'ITALIA HOTEL ASSOCIATES, L.L.C. and DARRYL BERGER COMPANIES, INC. | * * * | CIVIL ACTION NO. 02-2247 |
| | * | |
| Plaintiffs, | * | |
| | * | SECTION  B(5) |
| VERSUS | * | |
| | * | JUDGE LEMELLE |
| STARWOOD HOTELS AND RESORTS WORLDWIDE, INC. | * * | |
| | * | |
| Defendants, | * | MAGISTRATE CHASEZ |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

## PIAZZA D'ITALLIA HOTEL ASSOCIATES, L.L.C. ET AL. OPPOSITION TO STARWOOD'S MOTION TO COMPEL

Plaintiffs, Piazza D'Italia Hotel Associates, L.L.C. ("PDIHA") and Darryl Berger

Companies, Inc. ("Berger") (collectively "Piazza" or the "Piazza Group"), submit this Opposition

to defendant Starwood Hotels and Resorts Worldwide, Inc.'s ("Starwood") Motion to Compel

Fee
Process
X  Dktd
CtRmDep
Doc. No.

- 1 -

706022/3

## I.    **FACTUAL BACKGROUND**

On May 2, 2003, Starwood propounded its 69 Requests for Production of Documents on Piazza.   Piazza offered Starwood the option of physically inspecting the documents in their original location, but Starwood rejected this offer.   Thereafter, Piazza produced to Starwood 12 boxes of Piazza documents in response to the 69 requests, which included over 18,000 documents, bates stamped PZ000001 – PZ018672.  The documents were produced in the same way that they were kept in the usual course of business.  In fact, a review of the documents produced plainly exhibits how Piazza kept and filed its documents.  The name or origin of the documents, and/or each individual who kept the documents and/or the subject matter of the documents can be discerned from even a cursory review of the files produced.  For example the following file folder cover sheets can be found in the following boxes:

**Box 2**:
PZ001606 Development Services Agreement
PZ001910 Piazza Lease Documents Folder
PZ001911 Executive Summary Folder
PZ002126 Ordinance Amendments Folder

**Box 3**
PZ002179 Piazza Lykes Restart As Hotel Folder
PZ002180 Piazza: Lykes Building Folder

**Box 4**
PZ002251 Sizeler Architects Folder
PZ002289 Piazza Bellows Folder
PZ002283-84 Clevenger Associates Folder and Lyons & Hudson Folder
PZ004173 Piazza Thomas Ricca and Assoc. Folder

**Box 5**
PZ005365 Piazza Interoffice Memos Folder
PZ005734 City Planning and Zoning Folder

706022/3

**Box 6**
PZ005918 Piazza City Lease Folder
PZ005942 Piazza/Teamer Folder
PZ006441 Piazza/WestLB Folder

**Box 7**
PZ006962 Piazza D'Italia/Starwood Folder
PZ007588 Piazza D'Italia Letter of Intent Folder
PZ007664 Requests For Payment From Starwood Folder
PZ007995 Piazza/Starwood Budgets

Thus, in the production, Starwood can ascertain where the documents produced originated, *i.e.*, where they came from in the usual course of business.   Moreover, because some of the documents did not have labeled file folders, to further assist Starwood in identifying the documents, Piazza voluntarily supplied Starwood with a list of the type of documents found in each box in specific and readily identifiable categories with the bates range of those documents, (*see* Exh. A), as follows:

> **Box 1** (Floca Files) (PZ000001-PZ001601):   Design Concepts, Food Specs
>
> **Box 2** (PZ001602-PZ002129):   Construction Agreements, West LB Fee Ltr, Development Services Agreement, Closing Index, Draft Construction Agreement, Binder "Piazza Lease Documents"
>
> **Box 3** (PZ002130-PZ002250):   Lyons & Hudson, Floca Financial Memos
>
> **Box 4** (PZ002251-PZ004748):   Siezler Architect Files, Bellows Files, Clevenger Files, Lyons & Hudson, Landis/Anderson
>
> **Box 5** (PZ004749-PZ005825):   Piazza Newspaper Articles, Anderson Documents, IT Budget Files, Piazza Interoffice Memorandum, City of New Orleans Lease Negotiations, Eustis Engineering, City Planning Zoning, Middleberg, Riddle & Gianna documents
>
> **Box 6** (PZ005829-PZ006961):   Piazza/Westin, Piazza City Lease, Piazza/Teamer, Draft Operating Agreement, Churchill Equity Request, White Plains, Piazza Correspondence, Piazza

- 3 -

706022/3

Development, Piazza, Misc. Draft Agreements (Loews), Misc. Correspondence & Memos, Letter of Intent

**Box 7** (Floca Files) (PZ006962-PZ008845): Construction Agreements, Management Contracts (Starwood), Project Summary, Memos, Correspondence, Starwood Projection, Piazza - Letter of Intent, Starwood Budget, Design & Construction Documents

**Box 8** (PZ008846-PZ010322): Closing Documents

**Box 9** (PZ010323 - PZ011496): Anderson Contractors Invoices, Charles Floca Memos, Landis Anderson Documents

**Box 10** (PZ011497 - PZ014723): Schedule of Damages

**Box 11** (PZ014724 - PZ016710): Stone Pigman Files,      LCW Working File, Closing Documents, Reacquisition of Lykes Land, Donations to City of New Orleans – Documents, Zoning, Sale to WNO Ownership, Poydras Home Lease, Piazza Sale to Berger and Reed - Closing Documents, Building Purchase - Financing Documents, Ownership Entities, West LB Loan, MEDP and equity investment, Lease Agreement With City of New Orleans

**Box 12** (PZ016711 - PZ018672): Continuation of Stone Pigman Files, Resubdivision Surveys, Resubdivision – Documents, Zoning – Documents, Restoration Tax Abatement - Documents

As clearly indicated above, Piazza filed its documents in an organized, intelligible manner and has produced its document in the usual course of business in the same organized, intelligible manner and has gone beyond and above what is required of it under the Rules of Federal Procedure.

Subsequently, Piazza voluntarily supplemented its responses with the production e-mails of Piazzas' transactional attorneys, bates stamped PZ030000-PZ040317, produced in Boxes 13-17. Then, Piazza again voluntarily supplemented its responses with the production of the calendars of Roger Odgen and Darryl Berger, bates stamped PZ025108-PZ025155 and supplemented its responses with the transcript of a telephone conference between Mr. Berger and

- 4 -

a Starwood representative, bates stamped PZ025157-PZ25165. After removing privileged documents, the supplemental production included somewhere between 9,000 and 10,000 documents. The nature and origin of the supplemental production is clear – e-mails from and to Piazzas' transactional counsel, a telephone transcript, Roger Odgen's calendars, and Darryl Berger's calendars.

Piazza has complied with Rule 34(b) of the Federal Rules of Civil Procedure by producing its documents in exactly the way they were kept in the usual course of business. Starwood's request that Piazza itemize its production to correspond with each specific request is contrary to the spirit of Rule 34(b), and is unduly burdensome and should be denied.

## II.  **LAW AND ARGUMENT**

No where in its Motion to Compel does Starwood contend that Piazza did not produce responsive documents, rather Starwood contends, albeit erroneously, that Piazza has "refused" to produce responsive documents in any *coherent* fashion and has further "refused" to organize these documents in any meaningful fashion. [*See* Starwood Motion to Compel, ¶ 3]. Piazza need not produce documents in the manner that Starwood would like because Federal Rule 34(b) affords the producing party [Piazza] the *option* of producing documents as they are kept in the normal course of business *or alternatively*, organizing and labeling them to correspond to the particular requests. Despite Starwood's harsh and overly exaggerated contentions, the Piazza documents were filed and kept in an organized intelligible manner,and Piazza has produced responsive files to Starwood just as they were kept in the usual course of business,as demonstrated in Section IIB below.

- 5 -

Compelling Piazza to produce documents to correspond with Starwood's 69 particular discovery requests is inconsistent with the election a plaintiff may make under Rule 34(b), imposes an undue burden on plaintiff to organize more than 25,000 pages of records, and is a courtesy not similarly reciprocated by Starwood.

**A.      Rule 34 Affords A Producing Party The Option Of Producing Documents In The Usual Course Of Business Or To Correspond With Specific Requests.**

In contradiction to the option expressly afforded to the producing party by Federal Rule of 34(b), Starwood seeks an order compelling Piazza to identify specific sets of documents in response to Starwood's 69 Requests for Production of Documents.  Starwood argues that Rule 34(b) mandates that Piazza produce documents to correspond with categories in each Request in lieu of producing documents as they are kept in the usual course of business.  [*See* Starwood's Motion to Compel, ¶ 5].  However, Federal Rule of Civil Procedure 34(b) plainly states that "a party who produces documents for inspection *shall* produce them as they are kept in the usual course of business <u>or</u> *shall* organize and label them to correspond with the categories in the request." Fed. R. Civ. P. 34(b) (emphasis added).

In other words, under Rule 34(b), the producing party has the choice to produce documents as they are kept in the usual course of business OR to produce documents to correspond with the categories in the request; there is no mandate to produce one way or the other.  *Jobe v. ATR Marketing, Inc.*, 1998 WL 252382, *2 (E.D. La. 1998) (Wilkinson, Magistrate J.) (by producing documents in the usual course of business, plaintiff complied with Rule 34(b)); *Orgulf Transport Co., v. Magnolia Marine Transport et. al.*, 1998 WL 351845, *1

- 6 -

(E.D. La. 1998) (Wilkinson, Magistrate, J) (production in the usual course of business satisfied Rule 34(b)) *Henderson, et al. v. Compdent of Tennessee, Inc. et. al.*, 1997 WL 756600, *1-2 (E.D. La. 1997) (Wilkinson, Magistrate, J) (plaintiffs need only provide defendants with access to responsive documents in the 24 file drawers kept in the usual course of business for inspection by defendants); *In re G-I Holdings Inc.*, 218 F.R.D. 428, 439 (D. New Jersey 2003) (producing party had option of producing document in usual course of business or to correspond with requests); *Morgan v. City of New York*, 2002 WL 1808233 (S.D. N.Y. 2002) ("given the shear volume of the document requests, [the Court refused] to require defendants to do more than they have done [by producing in the usual course of business"); *Rowlin v. Alabama Dep't of Public Safety, et al.*, 200 F.R.D. 459, 462 (M.D. Alabama 2001) (producing party could decide that it would produce its records in usual course of business rather than to correspond with categories of each request).

Although the documents may not have been arranged in the order in which Starwood wished them to be, they were organized in the manner in which they were maintained during the usual course of business, and this is sufficient under Rule 34(b). *See Wrenn v. Board of Directors, Whitney M. Young, Jr. Health Center*, 1989 WL 23135, *2 (N.D. N.Y. 1989) (plaintiffs production in usual course of business was sufficient under Rule 34(b), even though not in the manner in which requesting party would have liked); *DCA Inc. v. Resorts International, Inc. of New Jersey*, 1989 WL 138846, * 1 (E.D. Pa 1989) (same).

In producing documents in the usual course of business, Piazza is not also obligated to organize its documents into neat little packages for Starwood. *See Lidell v. Board of*

- 7 -

*Education of the City of St. Louis, Missouri*, 771 F. Supp. 1496, 1499 (E.D. Missouri 1991). Starwood complains that it should not have to review and identify which documents from Piazzas' production are responsive to which requests and seeks an order requiring Piazza to do this work for it. As the court in *Lidell* reasoned, the producing party may properly avoid the burden of also having to designate which documents are responsive to which requests by exercising its option to produce its records as they are kept:

> [The requesting parties'] chief complaint is that it could not find what it wanted to find. This is not any fault of the [producing party] ... [The requesting party] requested everything under the sun and [the producing party] gave them access to it all. *The [producing party] was not obligated to wrap up the volumes of data into neat little packages for [the requesting party].*

*Id.* at 1499 (emphasis added)*; see also United States v. K.T. Derr*, 1993 WL 226100, *3 (N.D. Cal 1993) (producing parties' declaration that it produced documents in the usual course of business was enough for the Court; requesting party was in a better position to organize documents in accordance with requests).

Because the Rule clearly permits the producing party to choose to produce its records as they are kept, a duty to organize and label documents to correspond with each request attaches only if the responding party cannot or does not produce the documents as they were kept in the usual course of business. *In re G-I Holdings Inc.*, 218 F.R.D. at 439 (finding production of documents as kept in the usual course of business sufficient response pursuant to Rule 34(b)). Thus, when it is shown that the producing party intentionally produced a disorganized set of documents and or failed to produce them as they are kept, courts may order identification of

- 8 -

which documents correspond to specific Requests. *Id. and see e.g., Dangler v. New York City Off Track Betting Corp.*, 2000 WL 1510090, *1 (S. D. N.Y. 2000).

Because Piazza produced its documents as they were kept – in an organized fashion – and in no way manipulated its production to obscure critical documents, Starwood simply cannot support its motion to compel. Indeed, the gravamen of Starwood's complaint is that the large volume of documents produced is unduly burdensome and that Starwood can not tell without review which documents are responsive to which requests. [*See* Starwood's Motion to Compel, ¶ 4]. This type of complaint is not grounds for compelling identification of documents responsive to specific requests. *See Lidell v. Board of Education of the City of St. Louis, Missouri*, 771 F. Supp. 1496, 1499 (E.D. Missouri 1991); *In re G-I Holdings Inc.*, 218 F.R.D. at 439 ("the Government erroneously focuses on the need for organizing documents and refers to the sheer volume of the production ... [t]hese arguments fail in light of the plain phrasing of Rule 34(b)"). Moreover, it is the breadth and number of Starwood's requests that required Piazza to produce as many documents as it has.

**B.**  **Piazzas' Production Was Organized, Coherent, In The Usual Course Of Business And Far Superior To Starwood's Production.**

All of the documents produced by Starwood are responsive to Starwood's requests. Despite the exaggerated contentions of Starwood that Piazza "'dumped' in excess of 11,000[1] pieces of paper on Defendant," Piazza actually produced all of its documents to

---

[1] The bates numbers alone indicate that Piazza produced in excess of 25,000 documents to Starwood.

706022/3

Starwood in the usual course of business. Piazzas' filing system was organized, coherent and intelligible and were copied and produced in exactly the way in which the documents were kept.

Indeed, the documents were produced in the exact way that they were kept in the usual course of business. In fact, a review of the documents produced plainly exhibits the name or origin of the documents, and/or each individual who kept the documents and/or the subject matter. For example the following file folder cover sheets can be found in the following boxes:

**Box 2**:
PZ001606 Development Services Agreement
PZ001910 Piazza Lease Documents Folder
PZ001911 Executive Summary Folder
PZ002126 Ordinance Amendments Folder

**Box 3**
PZ002179 Piazza Lykes Restart As Hotel Folder
PZ002180 Piazza: Lykes Building Folder

**Box 4**
PZ002251 Sizeler Architects Folder
PZ002289 Piazza Bellows Folder
PZ002283-84 Clevenger Associates Folder and Lyons & Hudson Folder
PZ004173 Piazza Thomas Ricca and Assoc. Folder

**Box 5**
PZ005365 Piazza Interoffice Memos Folder
PZ005734 City Planning and Zoning Folder

**Box 6**
PZ005918 Piazza City Lease Folder
PZ005942 Piazza/Teamer Folder
PZ006441 Piazza/WestLB Folder

**Box 7**
PZ006962 Piazza D'Italia/Starwood Folder
PZ007588 Piazza D'Italia Letter of Intent Folder
PZ007664 Requests For Payment From Starwood Folder
PZ007995 Piazza/Starwood Budgets

706022/3

Thus, in the production, Starwood can ascertain where the documents produced originated, *i.e.*, where they came from in the usual course of business.   Moreover, because some of the documents did not have labeled file folders, because their subject matter was self-explanatory, to further assist Starwood in identifying the documents, Piazza voluntarily supplied Starwood with a list of the type of documents found in each box in specific and readily identifiable categories with the bates range of those documents, (*see* Exh. A), as follows:

**Box 1** (Floca Files) (PZ000001-PZ001601):   Design Concepts, Food Specs

**Box 2** (PZ001602-PZ002129):   Construction Agreements, West LB Fee Ltr, Development Services Agreement, Closing Index, Draft Construction Agreement, Binder "Piazza Lease Documents"

**Box 3** (PZ002130-PZ002250):   Lyons & Hudson, Floca Financial Memos

**Box 4** (PZ002251-PZ004748):   Siezler Architect Files, Bellows Files, Clevenger Files, Lyons & Hudson, Landis/Anderson

**Box 5** (PZ004749-PZ005825):   Piazza Newspaper Articles, Anderson Documents, IT Budget Files, Piazza Interoffice Memorandum, City of New Orleans Lease Negotiations, Eustis Engineering, City Planning Zoning, Middleberg, Riddle & Gianna documents

**Box 6** (PZ005829-PZ006961):  Piazza/Westin, Piazza City Lease, Piazza/Teamer, Draft Operating Agreement, Churchill Equity Request, White Plains, Piazza Correspondence, Piazza Development, Piazza, Misc. Draft Agreements (Loews), Misc. Correspondence & Memos, Letter of Intent

**Box 7** (Floca Files) (PZ006962-PZ008845):   Construction Agreements, Management Contracts (Starwood), Project Summary, Memos, Correspondence, Starwood Projection, Piazza - Letter of Intent, Starwood Budget, Design & Construction Documents

**Box 8** (PZ008846-PZ010322):  Closing Documents

**Box 9** (PZ010323 - PZ011496):  Anderson Contractors Invoices, Charles Floca Memos, Landis Anderson Documents

- 11 -

706022/3

**Box 10** (PZ011497 - PZ014723):  Schedule of Damages

**Box 11** (PZ014724 - PZ016710):   Stone Pigman Files, LCW Working File, Closing Documents, Reacquisition of Lykes Land, Donations to City of New Orleans – Documents, Zoning, Sale to WNO Ownership, Poydras Home Lease, Piazza Sale to Berger and Reed - Closing Documents, Building Purchase - Financing Documents, Ownership Entities, West LB Loan, MEDP and equity investment, Lease Agreement With City of New Orleans

**Box 12** (PZ016711 - PZ018672): Continuation of Stone Pigman Files, Resubdivision Surveys, Resubdivision – Documents, Zoning – Documents, Restoration Tax Abatement - Documents

As clearly indicated above, Piazza has produced its document in the usual course of business in an organized, intelligible manner and has gone beyond and above what is required of it under the Rules of Federal Procedure.[2]  Starwood's contentions that Piazza just "dumped" its documents on Starwood is just plain untrue.

Despite what Starwood contends [*see* Starwood's Motion to Compel, p. 4, fn. 2],[3] the means by which Piazza produced its documents to Starwood was similar to and even more specific than the way Starwood produced its documents to Piazza.  Starwood produced its documents only by purportedly identifying to whom those documents belonged.   In further contradiction of Starwood's contention that its production was somehow better than Piazzas', at a

---

[2]  Box 13 -17, which were later supplemented, consists of e-mails of Piazzas' transactional counsel.  The contents thereof are also readily identifiable.

[3]  Starwood contends that "[a]lthough Plaintiffs claim to have produced the documents in the manner in which they were kept in the normal course of business, there appears to be no business sense to the mass of records lumped together at all.  In contrast, Defendant produced its documents by identifying the records of each individual from Starwood who kept the records as part of their involvement in the transaction in question; the manner in which they were clearly – and understandably – kept in the course of the business of investigating this proposed transaction."

706022/3

deposition of Jim Alderman, who is a Starwood representative, Mr. Alderman testified that

Starwood mislabeled some of the documents produced to Piazza as coming from the files of Joe

Champ when those documents actually came from the files of Mr. Alderman. [Alderman depo

transcript, p. 165, ln. 15 to p. 167, Exh. B]. This is a significant and misleading error which

makes questionable the propriety and accuracy of Starwood's responses to Piazzas' requests for

production. For Starwood to claim that its documents were produced in a better fashion than

how Piazza produced its documents is disingenuous.

Finally, Starwood contends that its counsel has on numerous occasions attempted

to resolve this issue with plaintiffs' counsel. However, Starwood has neglected to tell the Court

that Piazza did in fact supplement its original answers to interrogatories to identify additional

specific responsive documents. Moreover, in the spirit of cooperation, Piazza not only produced

a box/file index but previously offered on numerous occasions to identify documents responsive

to a much smaller subset of Starwood's 69 requests; Starwood rejected these offers.

## C.     Forcing Piazza To Identify Specific Documents In Response To Some Of Starwood's Requests Would Be Futile, And As To Others Would Be Unduly Burdensome.

A plain reading of Starwood's 69 requests for production of documents reveals

that it would be an unduly burdensome exercise for Piazza to itemize which documents are

responsive to which requests and would cost in upwards of $15,000.[4]  For instance, Requests'

numbers 1 through 5, and 53 seek all documents between Berger, Odgen, and/or Floca relating to

---

[4]     We estimate that a conservative 96 hours to index all of the documents at $160/hour
equals $15,340. This figure would increase significantly to include the additional
attorney time necessary to determine which documents are responsive to which requests.

706022/3

the Piazza transaction. All of the responsive non-privileged documents of Berger, Odgen and Floca have been produced, what good would come of having Piazza itemize the Berger, Odgen and Floca documents from the 25,000 documents which have been produced?

Also, a great number of the requests are so broadly phrased that the documents to be designated would be essentially the entirety of Piazzas' production. *See e.g.*, Request numbers 6, 10, 11, 14,19, 23, 24, 29, 33, 38, 41, 43, 45, 47, 48, 49, 50, 51, 60, 62, 63, 68. Moreover, some of the requests are easily identifiable by simply looking to the index voluntarily provided by Piazza. For instance, requests seeking documents related to construction, design or architecture of the Piazza hotel, *i.e., see* Request numbers 13, 15, 16, are easily identifiable by looking to the box index provided to Starwood by Piazza. *See* Exh. A, *and generally see* boxes 1, 2, 3, 4, 5, 7, 9. Any requests for documents related to damages, *i.e.*, Request number 41, are also easily identifiable by looking to the box index. *See* Exh. A, box 10. Itemizing documents which correspond to these requests would not yield valuable information but would produce great costs to Piazza.

Finally, a great many of the requests are contention requests that would require extensive review and effort by Piazza. It appears that what Starwood really wants is for Piazza to designate its exhibits for use at trial. However, Piazza is still developing its case through on-going discovery and is not yet required to designate all its documentary evidence. Piazzas' trial exhibits are not yet due, and it is unfair to allow Starwood to, in effect, circumvent this schedule. Starwood's request for an itemization of responses to its 69 Requests for Production of

706022/3

Documents should be denied.  Alternatively, as in *Pollitt*, cited *infra*, if Piazza is required to itemize its production, Starwood should bear the cost of this hefty burden.

### D.  Starwood's Authority For Mandating Itemization Of Piazza's Document Production Is Inapplicable Here.

The cases cited by Starwood in support of its Motion to Compel Piazza to itemize its production to correspond with each request, demonstrates why Starwood's demand here should be denied.  For Example, Starwood cites to *Caruso v. Coleman Corp.*, 157 F.R.D. 344, 349 (E.D. Pa. 1994); ¶ 7; *Baine v. General Motors Corp*, 141 F.R.D. 328, 331 (M.D. Ala. 1991) in ¶ 8; *Snowden v. Connaught Laboratories, Inc.*, 137 F.R.D. 325, 332-33 (D. Kan. 1991) in ¶ 8; *Pollitt v. Mobay Chemical Corp.*, 95 F.R.D. 101, 105 (S.D. Ohio 1982) in ¶ 8; *Baxter Travenol Labs. Inc. v. LeMay*, 93 F.R.D. 379, 383 (S.D. Ohio 1981) in ¶ 8; *Koslowski v. Sears, Roebuck*, 73 F.R.D. 73 (D. Mass. 1976) in ¶ 5[5] and 8; *Dunn v. Midwestern Indemnity*, 88 F.R.D. 191, 197-98 (S.D. Ohio 1980) in ¶ 8; for the proposition that an unwieldy, inadequate or disorganized filing system is grounds for requiring the producing party to itemize its production in accordance with each request.  However, none of these cases stand for this proposition.  And in fact, the holdings in some these cases supports Piazzas' response to Starwood's document requests.

In all of these cases cited by Starwood, the producing party simply *refused* to produce *responsive* documents because to do so would be unduly burdensome.  In response to the failure to produce the responsive documents, the courts correctly reasoned that a producing party is not exempted from producing responsive discoverable documents simply because they

---

[5]  Starwood cites to *Hickman v. Taylor*, 329 U.S. 495, 500, 67 S.Ct. 385 (1947), which has nothing to do with facts at issue in this Motion to Compel.

are commingled with thousands of other documents or because of the volume of documents, and/or type of record keeping of the producing party would make a search for responsive documents unduly burdensome, expensive, time consuming and/or oppressive.  The courts in these cases therefore simply ordered production of the responsive documents.

They did not, as Starwood insinuates, mandate an itemization of the documents for production.  In fact, the court in *Pollitt* not only ordered production of the responsive documents but also ordered the requesting party to pay for the production because the production was so unduly burdensome to the producing party.  And, in *Caruso*, *Baine*, *Snowden*, and *Baxter*, due to the sheer expense of producing the documents, the courts required the <u>requesting</u> party itself (not the producing party) to inspect all documents for responsive documents.[6]  The courts, in effect, ordered the documents produced in the usual course of business, implying that itemization would be unduly burdensome for the producing party.

Similarly, just as in *Caruso*, *Baine*, *Snowden* and *Baxter*, Starwood was invited to review all of the original Piazza documents in its files as they were kept.  Starwood rejected this offer and instead opted to have Piazza produce copies of the documents.  Moreover, unlike in the cases cited by Starwood, here all responsive discoverable documents were produced to Starwood.

.

---

[6]   In *Baxter*, to mitigate the expense to the producing party, the requesting party offered to examine the documents of the producing party and only copy those that are relevant. Thus, the Court did not have to Order this remedy.

- 16 -

Starwood also cites to *Benbow v. Aspen Technology Inc.*, 2003 WL 22038416 (E.D. La. 2003); *Stiller v. Arnold*, 167 R.R.D. 68, 70-71 (N.D. Ind. 1996), *T.N. Taube Corp. v. Marine Midland Mort. Corp.*, 136 F.R.D. 449, 456 (W.D. N.C. 1991); *Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606, 611 (D. Neb. 2001); *Ferrito v. IKON Office Soluations, Inc.* 2000WL 1477188, *2-3 (D. Kan. 2000) in support of its contention that Piazza should be compelled to categorize documents as responsive to each request. The facts presented in these cases are easily distinguishable from those presented here. In all of these cases, the producing party did not produce documents in the usual course of business but rather blatantly produced documents in a disorderly and haphazard way. For this reason, the courts in these cases ordered some form of itemization of the documents produced. Here as discussed *supra*, the Piazza documents were bates stamped and produced in the usual course of business, in an organized, intelligible manner. Moreover, Piazza voluntarily provided to Starwood a file index of most of the boxes produced.

### III.   CONCLUSION

Piazza produced documents to Starwood in the usual course of business, in an orderly, intelligible manner and provided Starwood with a box index of some of the documents produced. It is contrary to Rule 34(b) to require Piazza to produce documents in the usual course of business and then also require Piazza to itemize the documents in response to each request. Rather, it would be manifestly unfair to subject Piazza to the unduly burdensome task of itemizing its documents to correspond with each respective request simply because Starwood does not like the order in which Piazza keeps its files. If the Court nonetheless orders Piazza to

706022/3

itemize its documents to correspond with each request, Piazza asks that Starwood bear the cost of

this burden.  Starwood's Motion to Compel should be denied.

Respectfully submitted,

Phillip A. Wittmann, #13625
Rachel W. Wisdom, #21167
Jennifer G. Mann, #27717
            Of
STONE PIGMAN WALTHER
   WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130-3588
Telephone: (504) 581-3200

Attorneys for Piazza D'Italia Hotel Associates,
   L.L.C. and Darryl Berger Companies, Inc.

- 18 -

706022/3

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Opposition to Starwood's Motion to Compel has been served upon all counsel of record by facsimile transmission and/or by United States mail, postage prepaid and properly addressed, this 2nd day of February 2004.

# Box Index of Piazza Documents (Boxes 1-12)

## Box 1 (Floca Files)  PZ000001-PZ001601
Design Concepts
Food Service Specs

## Box 2 PZ001602-PZ002129
Construction Agreements
West LB Fee Ltr
Development Services Agreement
Closing Index
Draft Contruction Agreement
Binder "Piazza Lease Documents"

## Box 3 PZ002130-PZ002250
Lyons & Hudson
Floca Financial Memos

## Box 4 PZ002251-PZ004748
Siezler Architect Files
Bellows Files
Clevenger Files
Lyons & Hudson
Landis/Anderson

## Box 5 PZ004749-PZ005825
Piazza Aritcles
Some Anderson Documents
IT Budget Files
Piazza Interoffice Memorandum
City of New Orleans Lease Negotiations
Eustis Engineering
City Planning Zoning
Middleberg, Riddle & Gianna

## Box 6  PZ005829-PZ006961
Piazza/Westin
Piazza City Lease
Piazza/Teamer
Draft Operating Agreement
Churchill Equity Request
White Plains

EXHIBIT

A

Piazza Correspondence
Piazza Development
Piazza
Misc. Draft Agreements (Loews)
Misc. Correspondence & Memos, Letter of Intent

## Box 7 (Floca Files)  PZ006962-PZ008845

Construction Agreements
Management Contracts (Starwood)
Project Summary
Memos, Correspondence
Starwood Projection
Piazza - Letter of Intent
Starwood Budget
Design & Construction Documents

## Box 8  (These have been indexed by CBM)   PZ008846-PZ010322

Loan Agreement
Promissory Note (West LB)
Mortgage, Assign of Leases, Security Agreement
UCC-1 Financing Statements
Completion Guaranty
Expense Payment Guaranty
Debt Service/Principal Short Fall Guaranty
Depository Agreement
Equity Pledge & Security Agreement
Security Agreement (WNO Operating)
Ominbus Agreement (Borrower)
General Assignment (Operating Tenant)
Agreement re: Guarantees Contingent Liabilities & Financial Statements
Consent & Tri-Party Agreement
Consent & Subordination Agreement
Assignment of Security Agreement & Ominbus Agreement
Pledge Assignment and Security Agreement (WNO Operating)
Recording Instruction Letter
Hedge Agreement
Miscellaneous Correspondence Folder
Budget Documents
Closing Index
Consent Agreement re: Omnibus Assignment
Fidelity Bond
Acknowledgement of Pledge
Hotel Operating Lease

Bill of Sale and Assignment
Construction Guarantee (Berger)
Construction Guarantee (Ogden)
Poydras Home Ground Lease
Management Contract
Limited Liability Company Agreement (Ownership)
Limited Liability Company Agreement (Operating)
Construction Contracts

**Box 9**   **PZ010323 - PZ011496**
Anderson Contractors Invoices
Charles Floca Memos
Landis Anderson Documents

**Box 10**   **PZ011497 - PZ014723**
Schedule of Damages

**Box 11**   **PZ014724 - PZ016710**
Stone Pigman Files
LCW Working File
Closing Documents
Reacqution of Lykes Land
Donations to City of New Orleans - Documents
Zoning
Sale to WNO Ownership
Poydras Home Lease
Piazza Sale to Berger and Reed - Closing Documents
Building Purchase - Financing Documents
Documents
Documents
Ownership Entities
West LB Loan
MEDP and EQUITY INVESTMENT
Lease Agreement With City of New Orleans

**Box 12**   **PZ016711 - PZ018672**
Continuation of Stone Pigman Files
Resubdivision Surveys
Resubdivision - Documents
Zoning - Documents
Restoration Tax Abatement - Documents

Page 162

1    Q.  Didn't Starwood prepare some
2  pro formas on projections it anticipated on
3  this project?
4    A.  Yes, but that doesn't mean the
5  broker respected those pro formas and didn't
6  push the numbers.
7    Q.  PZ09526, if you would please refer
8  back.  It's a pro forma statement of
9  operations?
10   A.  Yes, that looks like yours.
11   Q.  And, in fact, it's entitled, is it
12  not, Starwood Projection?
13   A.  Yeah, it is, but what does that
14  mean?
15   Q.  And if you look down at the bottom
16  where it says Net Operating Income and read
17  across for 2005, it shows net operating
18  income, 24,513,000?
19   A.  Yes.
20   Q.  And that's the same figure that's
21  reflected on the page I showed you
22  previously in the executive summary?
23   A.  Yes, it is.
24   Q.  So this is a Starwood projection,
25  correct?

Page 163

1    A.  That's your statement.
2    Q.  No.  It's your statement.  You
3  said it's a Starwood projection back in the
4  back?
5    A.  No.  I don't know.  Anyone could
6  type Starwood.
7      MR. HELFAND:
8        Just answer whether it's correct.
9      THE WITNESS:
10       I don't know.
11  EXAMINATION BY MR. WITTMANN:
12   Q.  You don't know?
13   A.  I don't know.
14   Q.  Did Mr. Zobler review this
15  document?
16   A.  I don't believe Mr. Zobler was
17  with the company at this point in time.
18   Q.  In May of 2000?
19   A.  I don't think he was.
20   Q.  Was it your testimony you don't
21  know who prepared this?
22   A.  We might have.  If you show me
23  something where I transmitted those numbers,
24  it's possible.  It's also possible they were
25  prepared by the broker.

Page 164

1    Q.  Mr. Wallenstein was the broker?
2    A.  Yes.
3    Q.  But Starwood authorized
4  Mr. Wallenstein to send this pitch book out
5  to a number of different potential
6  investors, did it not?
7    A.  Yes.
8    Q.  You are not telling me that you
9  were having this pitch book go out not
10  believing these numbers are accurate, are
11  you?
12   A.  I'm not telling you one thing or
13  the other.  You are putting words in my
14  mouth.
15   Q.  I'm not trying to do that.  What
16  procedures did you follow before allowing
17  this pitch book to go out?
18   A.  We would have sent projections to
19  Churchill Capital.  I don't know whether or
20  not these are the projections we sent.  We
21  may have had -- these may be ours, they may
22  not be.  Just because they state Starwood
23  doesn't mean anything.
24   Q.  But you would have expected that
25  Starwood would have sent projections to the

Page 165

1  broker, correct?
2    A.  Yes.
3    Q.  And can I at least assume you had
4  read the pitch book before you agreed to
5  allow it to be sent out by broker?
6    A.  No.  I don't think you can assume
7  I read the whole thing.
8    Q.  Did you read any part of it?
9    A.  I might have.
10   Q.  You just don't recall?
11   A.  I don't recall.
12   Q.  Let me show you what I have marked
13  as Exhibit 35 for identification,
14  Mr. Alderman.
15  (Exhibit No. 35 marked for identification.)
16       These are a series of handwritten
17  notes Bates stamped 3744 through 3785?
18   A.  Yes, sir.
19   Q.  Are these your notes?
20   A.  So far.  Let me keep looking.
21  They look like they are mine.
22   Q.  Did you keep some sort of notebook
23  in connection with this project?
24   A.  I wouldn't have a formal notebook.
25  These would have been pages out of notes

Jim Alderman - Examination by Mr. Wittmann

EXHIBIT

B

Page 166

1   that I have taken. But no, sir, not a
2   formal notebook.
3        Q.   Are these kept in a file?
4        A.   They would have been in my
5   personal files on this deal.
6        Q.   And I believe these are in the
7   form as produced to us?
8        MR. HELFAND:
9            Yes, the pages you have actually
10  referred to are part of Joe Champ's files.
11  That's why they say Joe Champ at the top.
12       MR. WITTMANN:
13           That's what I'm asking the
14  witness. The first page says Joe Champ?
15       MR. HELFAND:
16           They were his notes and in Joe
17  Champ's files.
18  EXAMINATION BY MR. WITTMANN:
19       Q.   Did you personally produce these
20  notes?
21       A.   I don't know. I don't remember.
22  I turned over all my files.
23       Q.   Your counsel just said that they
24  were in Joe Champ's file when he went to
25  find it.

Page 167

1        MR. HELFAND:
2            If we kept them in the correct
3   order, yes, we had individual files from
4   each person, and Joe Champ -- I'm assuming
5   that's what that means. There may be a
6   miscommunication.
7   EXAMINATION BY MR. WITTMANN:
8        Q.   Whose handwriting is this on
9   Page 1?
10       A.   That's not mine.
11       Q.   But everything else is yours?
12       A.   Everything else is mine.
13       Q.   I'm just trying to find out how
14  you kept these. Were they kept in the
15  ordinary course of business?
16       A.   Yes, this type of paper, it's not
17  bound paper. It's a loose leaf. It just
18  tucks in.
19       Q.   And at the top of some of the
20  pages is a date. Like the second page in
21  it's 8/3/00?
22       A.   Yes, sir.
23       Q.   And your circle with the line
24  drawn through it about full schematics have
25  been completed by DVIC. Is that a no?

Page 168

1        A.   No. It's just a doodle.
2        Q.   If you would refer over to the
3   notes for September 5, 2000?
4        A.   Yes, I see them.
5        Q.   STW03747?
6        A.   Yes.
7        Q.   About the middle of the page you
8   have Budget, and it says: If deal does
9   well, 20 percent is 20 million?
10       A.   Yes.
11       Q.   What did you mean by that?
12       A.   I don't know if Darryl's promote
13  was 20 percent in this or not. I think I
14  said if this deal does well his 20 percent
15  is worth 20 million. I don't recall
16  exactly. I think that might be right.
17       Q.   So the promote to Berger interests
18  would be 20 million if the deal did well?
19       MR. HELFAND:
20           Objection; calls for speculation.
21       THE WITNESS:
22           I think so.
23  EXAMINATION BY MR. WITTMANN:
24       Q.   Now, refer over to Page 03749.
25  You have three scenarios. What does that

Page 169

1   refer to, the three scenarios: 10 million,
2   20 million, 35 million?
3        A.   I don't even know if it relates to
4   this deal. I don't know.
5        Q.   And it says 25 million?
6        A.   As Joe walks in the door.
7        Q.   What does that refer to?
8        A.   I don't know. I have no idea.
9   Joe might have walked in the door.
10       Q.   Refer to Page 3753: Our
11  expectation is GMP numbers should improve.
12  What are you talking about there?
13       A.   That the guaranteed max price
14  number should improve, I believe, unless
15  there is someone in here named GMP.
16       Q.   And the very next page you make a
17  notation about their reputation premium,
18  because they get the deals done. What are
19  you referring to there?
20       A.   I don't know. I may have been
21  taking notes. I would be speculating. I
22  don't know.
23       Q.   On Page 3755 toward the bottom of
24  the page you make the comment: Every deal
25  they have worked on always ready to close

Jim Alderman - Examination by Mr. Wittmann